McIlvaine, J.
During the pendency of the proceedings-in the court below, to wit, on 18th of April, 1870, after the pleadings in the cause had been filed, but before the trial, and before the answer and cross-petition of the heirs of Mrs. Dudley had been stricken from the files, the general assembly of the state passed an act amending section 557 *549 ■of the code of civil procedure (67 Ohio L. 116), which provided as follows:
“In all actions brought for the recovery of purchase money of real estate, by vendor against vendee, it shall be -competent for such vendee, notwithstanding bis-continued possession-, to set up, by way of counter-claim, any breach of the covenants of title acquired by him from the plaintiff, and to make any and all persons claiming any adverse -estate or interest therein parties to the cause; and, upon the hearing, he shall be entitled to recourse (sic) against the plaintiff’s demand (for) the present worth of any existing lien or incumbrance thereon; and if the adverse estate or interest of the said claimants shall be an estate in reversion or remainder, or contingent upon a future event, the court may, at its discretion, require the vendee to surrender the possession to his vendor, upon the repayment of so much of the purchase money as shall have been paid thereon, with interest, or it may direct the payment of the purchase monej' claimed in the action, upon the plaintiff’s giving bond in double the amount thereof, with two or more sureties, to be approved by the court, for the repayment of the ■same, with interest, if the defendant his privities of contract (sic) shall subsequently be evicted by reason of said defect.”
If this enactment had not intervened, it is quite clear to our minds that the judgment below could not be reversed for error. The Great Western Stock Company was in the .undisturbed possession of the lands, under its deed from Saas. By this deed Saas had undertaken to convey to the stock company the whole of the premises in fee, with covenants of seizin and general warranty of title. According to the well-settled law of this state applicable to the undisputed facts of this case, there had been no breach of cither of these covenants at the date of the judgment. It is not claimed that the covenant of general warranty had been broken; and it is no longer an open question in this state, that a covenant of seizin is not broken until eviction, either ■actual or constructive, in a 'case where the grantor was in actual possession of the lands at the time of conveyance, *550 and where the grantee entered under the deed, 28 Ohio-St. 584, and cases there cited.
It is claimed, however, that as against Mrs. Dudley’s heirs, the grantor,-Saas, had no seizin, either in fact or in law, at the time the conveyance was made; that the estate of these heirs being in remainder only (as the rejected testimony tended to show, and as alleged in the petition of the stock company), the possession of Saas was not adverse as to them; and therefore his actual possession must be regarded as relating only to the particular life estate of Ambrose Dudley, of which Saas was seized in fact, and by virtue of a good title. In view of the law in relation to the real covenant of seizin, as settled in this state, we think this argument is unsound. It can be maintained only on the ground that the covenant of seizin has relation to a seizin in law, and is broken as soon as made, unless the covenantor was seized under and by virtue of an indefeasible title. Now, by the rule, as recognized in this state,, this covenant does not relate to the title under which the grantor holds, but refers to a seizin in fact — that is, to an actual or constructive possession of the property itself; and must therefore be regarded as an assurance of the title which the grantor has undertaken to convey. The gist of the covenant is, that the possession which passes with-the deed is ample, and shall so continue until the estate described therein shall have been fully enjoyed; hence, where the covenantee takes possession under a deed, with a covenant that the possession shall remain in him undisturbed during the continuance of the estate assumed to be conveyed, he has no right to complain until eviction or its-equivalent.
It is not claimed that plaintiff in error, without the aid of the act of April 18, 1870, could have counterclaimed against the demand of the defendant in error for the purchase money, damages on account of defects in the title,, unless there had been a breach of some covenant in the-deed. This brings us to the consideration of section 557 of the code as amended, and its effect.
*551 It is somewhat difficult to ascertain the exaet intention of the legislature in this enactment. If it were intended that a state of fact should be held to constitute a breach of real covenants, which did not constitute such breach before its passage, it is quite certain that the act, as to preexisting contracts, would be in contravention of the constitution, as impairing the obligations of contracts. We do not think, however, that such was the legislative .intent. The statute only authorizes the vendee, in an action against him for purchase money, to set up, by way of counterclaim, any breach of the covenants of his title. What shall constitute a breach, is not declared. It is true that he is authorized, notwithstanding his continued possession, to cause all persons claiming an adverse estate or interest in the lands to be made parties to the action. But it does not necessarily follow that it was intendéd that a counter-claim for damages, on account of such adverse estate, should be allowed in a case where a breach of the covenants does not take place at or before the time of trial. Operation can be given to the statute without such result.
There can be no doubt that the legislature intended to provide remedies in actions for purchase money, which were unknown under the former practice ; and to the extent that these new remedies can be administered without the impairment of contracts, we see no objection to their enforcement. Indeed, they are desirable improvements in the practice.
Oases falling within the provisions of this statute may properly be divided into three classes :
1. Where the estate or interest of the adverse claimant consists of a lien or incumbrance. In this class, where the covenant against incumbrances is involved — a covenant broken as soon as made (if an incumbrance in fact exists)— notwithstanding the continued possession of the vendee, a change is made as to the measure of damages, viz., the present worth of any existing lien or incumbrance; whereas, before, the full value of the lien or incumbrance could be recouped only in case the lien or incumbrance had *552 been extinguished by the covenantee. Whether this new measure of damages can apply where the covenant was made before the passage of the act, we need not now inquire.
2. Where the adverse estate or interest is in reversion or remainder, or is contingent upon some future event. In this class, where the covenant of seizin or general warranty is involved, there can be no breach while the vendee continues in possession, and until the right of possession accrues to the adverse claimant. Hence, no provision is made for enforcing a counter-claim on account of such defect in the title. In such case, the new remedy proposed by the statute is in the alternative, and at the discretion of the court — to wit, a decree rescinding the contract upon the repayment, by the vendor to the vendee, of so much of the purchase money as may have been paid, or a judgment in favor of the vendor for the purchase money, upon the vendor giving bond, with sureties, in double the amount of the judgment, for the repayment of the same to the vendee, if he shall be subsequently evicted by reason of such adverse estate. If the vendor refuses to accept either of these alternatives, he is left without remedy for the enforcement of his demand. This provision of the statute, if applied to a case arising on a contract made before the passage of the act, would be an unwarranted interference with the rights of a vendor under his coutract. It is no answer to say that such provision relates only to the remedy, and does not affect the obligation of the contract. We admit the doctrine to its fullest extent, that whatever relates merely to the remedy may be altered at the will of •the legislature, provided the alteration does not impair the obligation of the contract. But taking away all remedy is an impairment of the obligation of the contract. So, also, where the right to a remedy is made to depend on a condition, that the plaintiff shall enter into new contract relations with his debtor. It was not in the power of the legislature to require Saas to give a bond of indemnity to Ms vendee, in order that he might have judgment for his *553 purchase money; nor to authorize the court to rescind the •contract without the consent of the. parties, nor to require the vendor to refund so much of the purchase money as had been paid to him.
We find no error, therefore, in the refusal of the court to receive the testimony offered by the plaintiff in error.
3. The third class of cases which we think comes within the provisions of this statute, consists of those wherein the .adverse estate is in fee, and the adverse claimant is entitled to the immediate possession of the land. In this class, fhere is no provision made in the statute in relation to the form or character of the judgment to be rendered, nor is it necessary that there should be, in order to carry out the purpose of the act. It was evidently the intention of the ■statute that judgment in favor of the plaintiff for the purchase money, should be delayed until the validity of the adverse claim to the land should be determined. All the parties interested are brought before the court, and if the adverse claimant establishes his title, and it is found to be paramount, it becomes the duty of the court to render judgment in his favor for the possession. By this judgment the vendee is evicted, and the eoveuant of seizin, as well as the covenant of general warranty, is thereby broken; and the right of the vendee to counterclaim his damages by reason of the defect in his title, thereby becomes fixed .and determined. Without the aid of this statute, in an action by vendor against vendee for purchase money, the defendant might recoup damages for the breach of any of the covenants in his deed occurring at anytime before judgment. Hence, in this class of cases, the statute operates on the remedy alone, and only affects the remedy by delaying the judgment for a reasonable purpose — to wit, until the validity of the adverse claim is determined. In such case, the obligation of the contract is not impaired. Before the statute, a claim for purchase money was subject to a counterclaim for damages on any breach of the covenants in his deed, which had taken place before judgment thereon.
Erom this view of the statute, it would seem that there *554 was technical error in the order of the court below, striking the answers and cross-petitions of the heirs of Mrs. Dudley from the files. But the heirs of Mrs. Dudley are not complaining ; and it appears to the court that the plaintiff- in error has no right to complain of that error. In its petition in the court below, the plaintiff in error alleged that the interest of those heirs was postponed to the life estate of Ambrose Dudley, who was then living; and the only testimony which it offered at the trial, tended to prove the' same condition of their title.
Having disposed of the questions arising in this case,, upon the grounds above stated, it becomes unnecessary to inquire into the effect of the amendatory act of April 18, 1870, when considered in connection with the act of February 19, 1866 (S. & S. 1), which prescribes the force and, effect of the repeal and amendment of statutes.

Judgment affirmed,.

Day, C. 3., Welch, White, and Rex, JJ., concurring.